THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Wendell L.
 Muckenfuss, and Thomas D. Muckenfuss, III, Respondents,
 v.
 Pauline T.
 Muckenfuss, an alleged incapacitated adult, Paul M. Muckenfuss, Sr., and
 Pauline J. OKeefe, her next of kin, Defendants,
 of whom Pauline
 J. OKeefe is the Appellant.
 
 
 

Appeal From Charleston County
  J. C. Buddy Nicholson, Jr., Circuit Court
 Judge

Unpublished Opinion No. 2007-UP-361
Heard April 5, 2007  Filed July 31, 2007

REVERSED AND REMANDED

 
 
 
 Dennis James Christensen, of Mt. Pleasant, for Appellant.
 Nat B. Benson, Jr., of Mt. Pleasant, Sarah L. Clingman, of
 Columbia, for Respondents.
 
 
 

PER CURIAM:  Jane
 OKeefe (Daughter) appeals the circuit courts order affirming the probate
 courts orders appointing third parties as Pauline Muckenfusss (Mothers)
 guardian and conservator.  Daughter argues the probate court failed to make the
 necessary finding of good cause to bypass her statutorily-designated priority
 as Mothers attorney-in-fact.  Because we find the probate court failed to make
 the requisite finding and the circuit court erred in affirming the probate
 courts orders, we reverse and remand for proceedings consistent with this
 opinion.
FACTS
Mother is a widow who lives at an
 assisted-living facility, the Savannah House in Charleston.  In addition to
 Daughter, Mother has three sons: Thomas (Tommy), Wendell, and Paul.  Daughter
 was designated as Mothers power of attorney in October 2002.  Mother was
 admitted to the Savannah House in November 2002, following hospitalization for
 mental illness.
On
 January 29, 2004, Wendell and Tommy petitioned the probate court to find Mother
 incapacitated and to appoint a guardian and conservator.  The probate court
 conducted a hearing on September 15, 2004.  At trial, Dr. Susan Hardesty of the
 Medical University of South Carolina testified Mother needed a guardian and
 conservator.  Dr. Hardesty stated to a reasonable degree of medical certainty that
 Mothers capacity did not allow her to manage her resources.  
The hearing also included testimony regarding the relationship
 between the children and the affect the friction between the siblings had on
 Mother.  Dr. Hardesty testified that Mother felt paranoid regarding her
 childrens roles.  Dr. Hardesty was not certain if having one of Mothers
 children serve as a guardian or conservator would aggravate Mothers condition
 because Mothers reaction would be dependent on her paranoid ideation at the
 time.  Additionally, Dr. Hardesty stated any suggestions by Mother regarding
 who should be the guardian or conservator should not be given weight by the
 court.  
The guardian ad litem testified Mother was concerned over the conflict
 between her children.  The guardian believed a third party serving as guardian
 and conservator would be in the best interest of everyone given the infighting
 between Daughter and the sons.  The guardian believed a third party could
 circumvent current communication problems, but the animosity between Daughter
 and the sons will likely remain regardless of whether a third party is used.  The
 guardian testified he had no problem with the way Daughter provided care for
 Mother and handled Mothers finances. 
The friction between the siblings was illustrated by trial
 testimony.  Paul testified he had to call the police department to locate
 Mother after Mother moved to the Savannah House because no one informed him of the
 move.  Paul thought Daughter had done a good job providing for Mother; however,
 he believed having a third party involved in Mothers care would be best for
 everyone. 
Wendell also requested a third partys involvement in order to
 reduce the infighting in the family and minimize Mothers paranoia towards her
 children.  Regarding the friction, Wendell testified Daughter would not allow
 him to visit Mother privately on one occasion.  Wendell further testified Daughters
 husband followed Wendell to the airport and behaved suspiciously.  
According
 to Daughter, she gets along well with Tommy and Paul, but has difficulty with Wendell. 
 Daughter testified she did not tell her brothers she had power of attorney because
 Mother requested she not tell them.  Regarding Mothers relocation to the Savannah
 House, Daughter explained she notified the oldest brother, Tommy, and assumed
 he would notify the other two brothers.  Over the three years prior to the
 hearing, Daughter testified she has spoken with or seen Paul and Tommy numerous
 times, but only contacted Wendell twice.  
In response to Wendells statement that Daughter refused to allow
 him to see Mother, Daughter stated she suggested Wendell not meet with Mother
 alone because Mother had not seen Wendell in years and it would be too shocking
 for Mother.  According to Daughter, while Wendell was speaking to Mother that
 day, a Savannah House employee informed Daughter that Mothers whole body was
 shaking.  
The aforementioned Savannah House employee, Patty Daniel, testified
 she had no concerns over Daughters handling of Mother.  Daniel and Daughter
 both stated they believe the system in place prior to trial, with Daughter
 serving as attorney-in-fact, worked fine.  Daniel acknowledged that the only
 problem she saw under the system was Mother gets very agitated by Wendells
 phone conversations.  Daniel believed it is easier to deal with a family member
 than a third party.  
On
 October 19, 2004, the probate court ordered third parties Seniors Choice and
 First Southeast Fiduciary and Trust Services, Incorporated to serve as Mothers
 guardian and conservator, respectively.  Daughter appealed the orders to the
 circuit court.  On May 23, 2006, the circuit court affirmed the probate court. 
 After a hearing, the circuit court held the probate court did not abuse its
 discretion in finding that Mothers best interest would be served by appointing
 third parties as guardian and conservator.  This appeal followed.   
STANDARD OF REVIEW
[T]he
 determination of the standard of review by an appellate court of matters
 originating in the probate court is controlled by whether the cause of action
 is at law or in equity.  Dean v. Kilgore, 313 S.C. 257, 259, 437 S.E.2d
 154, 155 (Ct. App. 1993).  To make this determination, the appellate court
 must look to the essential character of the cause of action alleged by the
 petitioners in the court below.  Id.  Persons of unsound mind, like
 infants, are under the special protection of the courts of equity with respect
 to their persons, property, and legal transactions.  Shepard v. First Am.
 Mortgage Co., 289 S.C. 516, 518, 347 S.E.2d 118, 119 (Ct. App. 1986); see Dean, 313 S.C. at 259, 437 S.E.2d at 155 (finding petition to
 remove personal representative is in equity); Gaddy v. Douglass, 359
 S.C. 329, 333, 597 S.E.2d 12, 14 (Ct. App. 2004) (recognizing an action to set aside a power of attorney and an
 instrument revoking a power of attorney on the ground of a lack of mental
 capacity sounds in equity).  If the
 probate proceeding is equitable in nature, an appellate court may make factual
 findings according to its own view of the preponderance of the evidence.  In
 re Howard, 315 S.C. 356, 362, 434 S.E.2d 254, 257-58 (1993).  Therefore,
 [b]eing an equity case, the circuit court, sitting as an appellate court, had
 jurisdiction to make findings in accordance with its own view of the
 preponderance of the evidence.  Eagles v. S.C. Natl Bank, 301 S.C.
 402, 408, 392 S.E.2d 187, 191 (Ct. App. 1990).
The
 two-judge rule applies to appeals from the probate court to the circuit court.  Dean, 313 S.C. at 259-60, 437 S.E.2d at 155.  Pursuant to this rule, the
 standard of review in equity cases in which the circuit court concurs with the
 probate court is whether there is any evidence which reasonably supports the
 findings of the court below.  Id. at 260, 437 S.E.2d at 155-56.
The
 specific choice of who should serve as guardian and conservator is decided
 under the probate courts discretion.  The matter of a selection of a guardian
 is within the discretion of the court, and the appellate court ordinarily will
 not interfere unless a clear abuse of discretion is shown.  39 C.J.S. Guardian
 and Ward § 28 (2003).  Subject to statutory
 restrictions, the selection of a guardian is a matter committed largely to the
 discretion of the appointing court, whose decision will only be interfered with
 on appeal in the case of a clear abuse of discretion.  39 Am. Jur. 2d Guardian
 and Ward § 40 (1999).  
The
 relevant statutes in this case, sections 62-5-311 and 62-5-410 of the South
 Carolina Code, indicate the appointing court has discretion by using the
 phrases may be appointed guardian and the court may appoint . . . as
 conservator, respectively.  The appointing court will not be overturned absent an
 abuse of discretion.  See Patterson v. Cook, 288
 S.C. 220, 221, 341 S.E.2d 782, 782 (1986) (interpreting an appointment statute
 without priority guidelines).  
DISCUSSION
Daughter argues the
 probate court, and in turn the circuit court, erred by failing to make a
 finding of good cause when appointing third parties as Mothers guardian and
 conservator because Daughter had statutory priority as Mothers attorney-in-fact. 
 We agree.
Section 62-5-311 of
 the South Carolina Code provides the order of priority for guardian appointees,
 stating:

 (A) Any competent
 person or a suitable institution may be appointed guardian of an incapacitated
 person.
 
 (B) Subject to a finding of good cause by the court, persons who are not
 disqualified have priority for appointment as guardian in the following order:
 . . .
 (2) an attorney in fact appointed by the incapacitated person
 pursuant to Section 62-5-501,
 whose authority includes powers relating to the person of the incapacitated
 person;

S.C.
 Code Ann. § 62-5-311 (Supp. 2006)(emphasis added). 
Section
 62-5-410 of the South Carolina Code provides the order of priority for
 conservator appointees, stating:

 (a) The court may
 appoint an individual, or a corporation with general power to serve as trustee,
 as conservator of the estate of a protected person. The following are entitled
 to consideration for appointment in the order listed:
 . . . 
 (3) an attorney in fact appointed by such protected person
 pursuant to § 62- 5-501;
 . . . 
 
 (b) . . .  The court, for good cause, may pass over a person having priority
 and appoint a person having less priority or no priority.

S.C. Code Ann. 62-5-410 (1987 & Supp. 2006)(emphasis added).
Good
 cause is defined as [a] legally sufficient reason.  Good cause is often the
 burden placed on the litigant . . . to show why a request should be granted or
 excused.  Blacks Law Dictionary 235 (8th ed. 2004).  
Based on the language of the applicable statutes, we believe
 before a probate court bypasses a person with a statutory priority for the
 appointment of a conservator or guardian, it must make a finding of good cause
 by articulating its reasons for such a finding.   See Hodges v.
 Rainey, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (If a statutes language is plain, unambiguous, and conveys a clear
 meaning, then the rules of statutory interpretation are not needed and the
 court has no right to impose another meaning.); McClanahan v. Richland
 County Council, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002)(All rules of
 statutory construction are subservient to the one that legislative intent must
 prevail if it can be reasonably discovered in the language used.); cf. Aycock
 v. Aycock, 284 S.C. 193, 195, 324 S.E.2d 650, 651 (Ct. App. 1984)
 (reversing award of unallocated alimony and support to wife, who had custody of
 children, where family courts order gave no cause or reason for award where
 applicable statute required that if an award of unallocated alimony and
 support payments is to be made, there must first be a finding of fact that
 there is good cause to make this award rather than allocated awards). 
In the instant case, the probate court passed over Daughters
 statutory priority without a specific finding of good cause in the orders
 appointing a third-party guardian and a third-party conservator.  In its
 orders, the probate court acknowledged that Mother had executed a durable power
 of attorney in favor of Daughter.  Without explanation the court cancelled
 Daughters power of attorney and found that it was necessary and desirable to
 appoint a third-party guardian and conservator. 
From all indications in the record, Daughter had taken good care
 of Mother.  Although the probate court indicated in its order that Mother
 wanted a third party appointed because of the friction between her children, the
 evidence includes testimony of Dr. Hardesty that any suggestions by Mother
 regarding who should serve as her guardian and conservator should be given limited
 weight if any.  Admittedly, the record does include testimony of friction
 between the siblings; however, the probate courts mere acknowledgment of the
 familys divisiveness does not qualify as a finding of good cause.[1]  
As pointed out in the circuit courts order, the probate
 court was undoubtedly cognizant of the statutory priorities.  The probate
 court, nevertheless, did not comply with the requirements of the statutes in
 bypassing Daughter without articulating its reasons why a third party would
 better serve as a guardian and conservator.  Because the probate court failed
 to make the requisite finding of good cause, we remand this case to the probate
 court for a finding consistent with sections 62-5-311 and 62-5-410.  See Act No. 483, 1990 S.C. Acts 2152 (amending section 62-5-311 to require a
 finding of good cause and stating relating to guardians, so as to provide for
 additional persons who may be appointed as guardian subject to a finding of
 good cause instead of the courts discretion); 21 S.C. Jur. Guardian and
 Conservator § 15 (1993 & Supp. 2006) (Absent a contrary finding of
 good cause by the court, competent persons qualified to serve as guardians must
 be selected pursuant to the prioritized list of qualified persons under
 sections 62-5-311 and 62-5-410.).  On remand, the probate court should make specific
 findings based on the current record and should not consider additional
 testimony or evidence.
Accordingly,
 the decision of the circuit court is 
REVERSED
 AND REMANDED.[2]
HUFF,
 BEATTY, and WILLIAMS, JJ., concur.
 

[1]   At oral argument, the parties urged this court to
 definitively rule on whether friction or dissension between family members is
 sufficient to constitute good cause to bypass a person with a statutory priority. 
 In light of the probate courts failure to make a specific finding regarding
 good cause, we do not believe this case presents the appropriate factual
 circumstances for this court to make that determination.  Therefore, we decline
 to rule on that issue.
[2]   In reaching our decision, we have considered the
 case law from other jurisdictions that was submitted by the parties.  We,
 however, conclude that the statutes and appellate decisions from this state
 provide a sufficient basis for our decision.